It pleases the Court, Your Honors. My name is Russell Petty, representing the plaintiff, Vicki Davis. We've in our papers, a lot of issues have been addressed, and, you know, in the limited time that we have to talk about them. With the Court's permission, obviously, the Court can ask me about anything it wishes, but we've read your papers, and you're not waiving any argument by not addressing it today. Very well, Your Honor. I think the three key things that I'd like to talk about this morning are the manipulation of the record, which we believe was intentional and had an impact on the evidence that we were allowed to present in the District Court, the failure of the insurer and the District Court to at least pay some credence to the Social Security determination, and finally, whether the District Court's determination with respect to Ms. Davis' disability was supported by the record, and, of course, part of that determination is the appropriate standard of review that should be used. So your argument about abuse of discretion here from the good judge is what? Because there's no question that he has the discretion to either put in evidence or not put in evidence. He has the discretion to decide if he's going to determine it on the administrative record or not determine it on the administrative record. That's what we've held in all of our cases. Well. So what did he abuse? He said, I'm going to hear it on some and not on others. Well, what else did he do, if anything? Well, those are, you know, there's a standard of review with respect to the evidence determination, and there's a standard of review with respect to the determination with respect to the disability. You'd expect me then to, based on the evidence he let in, say that he made a bad decision? With respect, and I'll turn, because the Court is asking about it, to the issue about the, you know, the standard of review with respect to the disability determination. Correct. There are three factors that require a reduced standard of review and, in my opinion, require a de novo standard of review, because I believe that the district court We agree with you on de novo. Yeah. The He has a de novo. We don't. No, no, no, Your Honor. I believe that the, that this Court should review that determination de novo. Where do we find that? We find that because when a district court makes a determination under an erroneous standard of law, at that point, if this Court is to affirm that determination, it should affirm that determination under a de novo standard, because the district court, while, you know, it certainly has the right to find facts, if it finds fact If it's an issue where there's a mixed issue of fact and law, and the district court misapplies the law in making that determinate, mixed Well, if he misapplies the law, then it's an abuse of his discretion. That's as I understand it. But go ahead. What did he do? He just said, under our opinions, he says, it's, it allows him to let in what he wants and not let in what he doesn't want and determine it either on the administrative record or additional evidence. And in this case, this judge's written record said, I only made it on the administrative record. Well, you know, first off, getting to the merits, because, because, because I was talking about that, and then I'm going to talk about the evidentiary issue, the, there are numerous circuits, the, the 8th, the 11th, and the 7th, that have recognized that when a, you know, claims handling fiduciary and insurance company is paying benefits over a substantial period of time, has made a determination that this person is disabled, then at that point, the issue is not, you know, the, the medical evidence that's presented right at that moment, the, the issue is, does the insurer have some obligation to establish what's changed in the condition, in, in the person's condition? You know? But that is not Ninth Circuit court law. As I understand it, I think that Ninth Circuit says the burden remains on the claimant at all times to establish under a contract of insurance that she qualifies under the terms of the contract of disability. In this case, meaning that after the first 60 months, that she can establish that she was unable to do any work for full-time basis. Your Honor, I'm, I'm, I'm unfamiliar with, with any Ninth Circuit case law which is, which is rejected. The, the analysis in McOsker and Levinson and Hackett. No, I don't say that, I don't say it is specifically a rejected analysis, but I do say that the only Ninth Circuit case law that we know about, or I know about, is that the burden remains on the applicant to establish coverage. Again, Your Honor, this, this particular fact circumstance where someone has been, you know, in other words, I don't think that. A Ninth Circuit court case in which payment by the insurer shifts the burden of proof from the applicant to the insurer to show that the applicant is no longer disabled under the terms of the contract. Your, Your Honor, I believe that Ninth Circuit case law is that that issue has just never been presented. I agree with you. In, in other words, this Court has never decided it one way or the other. And, and it's, it's free to follow. So if we were to decide it the other way, we'd be creating a circuit split with the Eighth and the Seventh Circuit. If, that's exactly, well, three circuits, actually, the Seventh, Eighth, and Eleventh. That's exactly correct, Your Honor. If this Court were to say, look, we don't care how long the insurance company has been paying benefits, the issue is always right at that moment, what does the evidence say, and we're not going to, we're, we're, we're not going to require the insurance company to say what has changed, this Court would be having a circuit split. So are you, are you telling me then that what Judge, that good Judge did in this case when he said in his ruling that you have the burden to show the disability that he was incorrectly reciting Ninth Circuit law? Your, Your Honor, I, I, I think that those are, are, are two separate issues. I, I, I think. Well, that was what he made his decision on. I, I, I. I mean, that is one of the things that he put right in his decision. And that seems to me to be the one thing you want me to change. I don't have any Ninth Circuit law suggesting that it is different. And I have seen, in fact, in other ERISA cases, La Mancha versus Voluntary Plan Administrators, talking about ERISA disability cases, we have held that the claimant needs to bear the burden. Your, Your Honor, I'm not disputing. To prove the disability. I, I, I'm not disputing that Ms. Davis bears the burden. The question is the burden as to what? If the issue before the district court was properly, has there been a showing that Ms. Davis's condition has changed, then clearly, you know, in, when, when looking at, at who bears the preponderance of the evidence at that issue, Ms. Davis does, because that's the traditional mechanism. The plaintiff bears the burden of proof. But we were never able to, to reach that issue. The district court never decided it on that basis. Never gave any, you know, requirement that the insurance company show. We, you know, presented evidence that showed that her condition, you know, hadn't changed. We presented evidence by Dr. Wallace, for example. Can I ask you a question on the scope of the review? First of all, did you realize, inconsistent, but we, on this point, but we have to go with what he said in his written findings and conclusions and not what he said orally, but explain to me why the circumstances in this case clearly established that the additional evidence were necessary to conduct an adequate de novo review under Mongoluzo. Very well, Your Honor. Well, first, I mean, and I appreciate that question, Your Honor. First, I mean, the, the, the notion that a, an insurer, by selectively rejecting some evidence from the administrative record under the guise that it was closed, and then turning around and saying, but we're going to let all this other evidence afterwards in, and then using that as a rationale to control the presentation of evidence before the district court, you know, frankly, should be abhorrent, and, and, and the court should, should reject that out of hand. The court should not allow, I mean, it's one thing, as Alfred says, after repeated submissions by the, by the plaintiff or the insurer at some point to be able to say, look, the record is closed, we're not going to allow any more evidence in, you have a judicial remedy, go ahead and take it, but, but, but that's our next step. And, and, and that, that may be fine. Well, this Court has, has satisfied us. But what did you argue to the district court? I mean, the, the, what is it, Shrek and Hogg? Who's, Your Honor? Whose declaration, or answers to the insurance company, I guess they sent questionnaires saying, do you agree that Mrs. Davis is capable of performing at least sedentary strength level work? They circle yes. And then that there's, there's an omission. It doesn't, it doesn't say whether they could perform, she could perform sedentary work full time or not. Well, well, in fairness, Dr. Who's did, the thing that he circled said, said full time. Full time. Dr., Dr. Shrek just said yes, and then later on clarified in the declaration that Mr. Hancock tried to present. So that was a clarification, but, but the rubric you have to show, you have to put this under is, did the partial answer of Dr. Who's clearly demonstrate that you could not conduct adequate de novo review without having his full answer? Well, I mean, especially when you consider that in his declaration, he not only said, I didn't say she can work full time, but then went on to say, and I don't think she can. So in other words, the insurance company had a document that indicated that the treating physician believed that Ms. Davis could work full time at a sedentary occupation, when in fact there was a declaration which, because of the insurance company's manipulation of the record, Judge Reel excluded that said she couldn't. I'm sorry, Your Honor. So if we remand this to Judge Reel and he, and he says, all right, then I'm going to expand my, my administrative, the record beyond the administrative record, I'm going to take Who's and Shrek's second declarations into consideration, and I'm going to find that I don't believe them because I think that we're put up to it by plaintiff's attorneys and they're not credible. And I don't believe this, this is just litigation, forensic declarations, as opposed to the earlier, more credit worthy treatment reports. You're back in the same place. Well, you know, Your Honor, personally, I mean, I, I think that, that the failure of the insurance company to properly account for the social security disability award to, you know, misapply the standard, which, which was then in turn by misapplied by, by Judge Reel, Ms. Davis, there's substantial evidence of her disability. Which standard? Of, you know, the, the, the, the standard would, which I believe this court should, should adopt from the other circuits that, that says that when someone has been paid benefits for a substantial period of time, the issue should be, has anything changed? Well, let me, let me ask you a question about that because I know I've read these other circuits cases, but I, I, I'm troubled. I read the benefit provisions clauses of your contract that you entered into. They suggest that the insurance company will pay a monthly benefit if an insured submits satisfactory proof of total disability to us. They say we, the monthly benefit will stop on the earliest of the day the insured dies, the maximum duration of the benefits, or the date the insured fails to furnish the required proof of total disability. Now I didn't enter into this contract, your client did, but it seems to me that in order for you to get this court to adopt any other circuits law and put it on the top of a contract, you got to tell me why is this, and nothing has been argued that this is unconscionable, that this is outlandish, that this is not something that ought to be, that there's some kind of contract law, that some contract remedy that would cause me to undo all of this. All I have is some idea that when we go to court, even though the contract says I bear the responsibility to submit a proof, that I am going to say, we're going to change it. Now I can have every bit about the fact that some courts suggested so, but I have a contract I'm supposed to enforce here. And you're asking me to put a court enforced doctrine on top of a contract these parties full well entered into. And then on top of it, I have all of this ERISA law. I have all this social security law, which gives the one who wants the benefits, the responsibility of proving the disability, and yet I'm supposed to come from left field and say, because the first and the fifth and the eighth say that's the way it ought to be. I'm going to impose that on this contract. What, how do I get to that? Judge Reel's decision applied the law as the contract had suggested. The only thing that Judge Reel's decision didn't do, and I'm giving you everything so you can give me the business, is that he applied a different of what the proof was in his written contract or written order than he did when he was out in the court talking. And then he didn't take into consideration that he talked about things that now in the written stuff that wasn't his anyway, prepared by somebody else, and he just signs off, didn't do what it had to do. Now that may be an abuse of discretion, but that still gets us back to Judge Baye's honest question. If we send it back just to say, you got to let it all in, how do we change? Okay. Well, Your Honor, let me just, just as a point of clarification, and I'm, you know, with respect to the parties entering into a contract. I mean, the reason we're, we're here instead of in Tura County Superior Court, which is where Mr. Hancock originally filed a lawsuit, is that the parties didn't enter. And this is the contract between the employer and the, and the insurance company to provide benefits to, to Ms. Davis as a, as an employee. The court has certainly, the courts have certainly recognized that being as part of the, the, the reason for, for ERISA is the protection of employee benefits, that in some cases that they are going to, to put a, a certain gloss on, on some of the, some of the requirements. You know, Your Honor, I, I, the, one of the problems I have just as a, as a practical matter with the way that the insurance company decided this matter and, and Judge Riehl upheld it is, is, you know, these days with, you know, managed care and, and the way doctors are, you know, you, you oftentimes you get very interrupted care, you know, in the past five years, I don't think I've seen the same doctor twice. The, so, you know, Ms. Davis every couple of months has got to go to a doctor and she's got to get them to, to fill out the form and check the block in the insurance company form. And when she succeeds in getting that done, well, okay, she's okay for her benefits for the next couple of months. But if it just happens once that a doctor, maybe a new doctor, which is the doctor who was unaware of her prior history, which is the case here, maybe a doctor who hadn't even looked at the medical records that she had in the past, the, you know, checks the wrong block. And then all of a sudden Ms. Davis is out forever. And, and Your Honor, I just don't think that's the protection of employees that the Supreme Court has said that the federal courts are supposed to use. And I hear you and I hear you, but that's why the ninth circuit adopted the rule, which said the district judge has de novo review. We're not going to give the insurance company any speculative, spectacular thing here. We're not going to give them any abuse of discretion standard. We're going to let the old district judge look at this and have all the evidence in front of him and decide this case on all the evidence he, in his discretion, wants to admit. Well, Your Honor, and just to, to, to address that last point, I mean, if we're we are, then the court did not recognize that it had discretion with respect to the admission of the evidence. Rather, it presumed that it was required to decide this case on really not on the administrative record because the administrative record, you know, should not have excluded these documents. Or if it did exclude these hand-packed documents, it should have excluded plenty of other documents, some of which were unhelpful to the plaintiff. And one of them, at least in the course of trial, Judge Reel had some unpleasant things to say to me about. And, and, and so the, the fact is, is it, it just was not a fair use of the, the evidence. So, Your Honor, I have a, a minute and 15 seconds left if I may. I have a question. Oh, yes, Your Honor. I'm trying to, the judge said the decision of the Social Security Administration is not binding. Did he give it any weight at all? Your Honor, Your Honor, nobody ever gave it any weight. And, and, and, and let me just, as the court has asked, so, so I'm just going to use up the remainder of my time talking about this because I think it's very important. Here, you've got a situation where Ms. Davis was compelled by the insurance company to seek Social Security disability benefits, or else, you know, they weren't going to give her the full amount of benefits. Well, don't they adjust the, you know, subtract from what they owe the amount of money that she gets from Social Security? Well, it, it's a step more than that, Your Honor. That's true. But what they do is they say, look, if you don't apply for Social Security disability benefits, and we think you'd be entitled to them, we can take an estimated offset. And, and, and the contract allows them to do that. And so they entered into an agreement with Ms. Davis, which says, you go and apply for Social Security, agree to appeal if you're denied, and we won't take our estimated offset, an agreement they broke, but that's a whole other story. And, and, and, and, and let me just focus on, on, on what's important here. The, not that that's unimportant, but the, the point is, Your Honor, is that, is that at that point, then when, of course, the money comes in from the Federal Government, first reliance standard, they take it all. And so they insisted that they're insured, go and seek a government benefit for their own purpose, which then they proceeded to, to, to take all to themselves. And at that point, Your Honor, Judge Easterbrook in the Seventh Circuit, who's been joined by at least one other circuit, has taken the position that there's some additional burden, there's some additional weight that has to be put on the Social Security determination, not quite collateral estoppel, but close enough so that we could almost get there. And I, and I submit that the failure of the district court to pay any attention at all to that. It's a heightened scrutiny or a high, to give it some meaning or at least consider it in the decision. To, to, to, to give it some consideration. I, I, I submit that it fits in very well with the, with, with, with the, the, the rationale with respect to the, you know, the changed circumstances that we were talking about earlier. The district court has to have some reason as to what has changed since then. And certainly circumstances can change. And certainly Madden is correct that the court is not bound by that Social Security determination. It's not quite collateral estoppel, but there has to be at least a little bit of weight paid to it. And in this particular case, there was none. I, I, I see I've, I've got a stoplight pointed at me. Does the court have any additional questions? No. Thank you. Thank you, Your Honors. Good morning. Joshua Backrack. I represent the Appellee First Reliance Standard. And a lot of issues that have been thrown out here, and a lot of them have been misstatements of the law, I believe, on the part of opposing counsel here. Talking about misstatements of the law, Mr. Backrack, will you agree with me that when the defendant's proposed findings of fact and conclusions of law were prepared for Judge Reel's signature, when he's at Record 45, paragraph 4, applying de novo review, this Court must limit its review to the administrative record as it existed at the time the First Reliance Standard made its final determination, citing Thomas v. Oregon Fruit? That was not the law in the Ninth Circuit? It's an understatement of it. The law is that it's in the discretion. It's now an overstatement of his lack of ability. It's an incorrect statement. It is an incorrect statement. I fully agree with that. It is an incorrect statement, right. I agree with that. So if the judge made an incorrect determination of the law as to the admissibility of evidence, that, under our law, sounds like, to me, an abuse of discretion. It would be, in most cases, however, Your Honor, under the standard that's applied here, the Silver case from the Ninth Circuit, when a court adopts a party's proposed findings of fact and conclusions of law, the court takes a more searching review of the court's decision. And in that more searching review, let's take a look at the court's actual trial decision. Well, if I take a more searching review, I can't find any way to determine that that is good law in the Ninth Circuit. It isn't. And so should have Judge Reel taking a more searching view of it. I agree, Your Honor. But here's what happened, Judge Smith. The court canceled six circuits, including our own, all apply the rule that was expressed in Mongoluzo. And that rule is clearly implicated in this case, because documents were offered that were extrinsic to the administrative record, and they were offered to clarify treating physicians' statements. And that's just the whole piece, the whole chunk missing from the, you know, sometimes lawyers, when they prepare these, these conclusions, they get carried away, findings of fact and conclusions. Yeah. And they, they put them, they try to make them really favorable to their own side and everything. And sometimes that's a mistake. Unfortunately, it wasn't. I wasn't the trial counsel. I'm sure you weren't. I wish I, I wish I was. But here's the point that I think is highly important here. When did the judge make his decision? When did he say, here is judgment for the defendant? The judge did that right on the record on February 7, 2006, in the transcript. Right. But we have, we have law in the Ninth Circuit says that we disregard that. We look at what was actually written and signed. I believe under the Supreme Court's decision that was cited in Silver, you're to look at the entire situation. That's my understanding of the law, is that you have to look at the. We're supposed to look at other things to contradict what he actually signed and entered as a judgment? We're supposed to look at the entirety of the situation, the circumstances that were entered into. And when you have here a judge saying specifically that the latter produced declarations were considered by me, that's page 78 of the record excerpts. So this judge actually did consider that evidence. But what's more important here is, let's look at the issue of waiver. Counsel is saying that the court should have looked at all these other documents, Hancock documents, but he never introduced them at trial. There was a vocational report. And my understanding, looking at this record, is he never introduced it. That's a waiver. You mean the Myers report? I believe if that's the one. Dr. John Myers? I'm not sure if that's the name, but I remember that there was a, no, no, there was a doctor's report, a subsequent doctor's report. But then there was a vocational report. And the vocational report, my understanding is that was never introduced at the trial. I thought he attempted to introduce the Spengler documents called the Hancock documents, but they were rejected. By the district court? That's, it's hard to tell from the record. It is hard to tell. But from what I can see is the court said it would, the judge real said he was going to consider all of this evidence. So let's get your, I don't know if I get the answer to Judge Wardlaw's question. Your position is that in determining whether Judge Real committed an error of law that is an abuse of discretion in limiting his review to the administrative record, we are not bound by the findings of fact and conclusions of law because under the Silver case, we should take a look at all the proceedings, including oral statements shown at excerpt of record 78. True? That's my understanding, Your Honor, of the law. Now, tell me about the Silver case. The Silver versus Executive Car Leasing. In that case, it's one, again, where the court adopted a party's proposed findings of fact and conclusions of law, and the court said that this is a, this is not the recommended course of action. And citing to a Supreme Court decision, but that Supreme Court decision, and we've quoted a portion of in our brief, discusses that that's not, that doesn't mean it's erroneous. That doesn't mean it's an abuse of discretion. What it means is you instead have to take a more searching look, though that's the word from the court, a more searching look, but to determine whether it was an abuse of discretion, correct. Now, here's the problem that I have with this, Your Honor. Counsel keeps talking about my client manipulating records, and I find his argument to be highly offensive because that never happened here. What happened here is after my client's final decision, there was an insurance department complaint submitted by his client. My client takes that and puts that in the claim file. These are the documents that he's saying we are using to bolster our decision. They're his client's records that she sent as part of an insurance department complaint. Counsel's also saying that after, two years after a final decision, we have, based on another circuit's law that is misquoted, by the way, based on Fifth Circuit law, we have a duty to keep putting in more evidence even after a final decision until litigation. And that's not the law of this circuit either. It's the record at the time of the final decision, unless within the discretion of the district court, additional evidence is admissible. So here's the question. Under the standards that were set forth in Mongaluzzo and in Carney, and by the way, Judge Wardlaw, in your decision in Opeta, same counsel, and didn't he thump this table and say, that was so wrong of the judge to let in that outside evidence? It's applying the same law. And you have to admit that Judge Rigg, in that case, really clearly didn't understand what was his scope. I agree. But now let's look at it. Let's look at the law. Forget about, you know, the different situations. Let's look at the law itself. Is this evidence that he could have provided earlier? Yes. He could. Why couldn't Dr. Hoos and Dr. Schrock have provided those declaration years earlier? Why couldn't they after the initial denial? There's an appeal. ERISA gives you the right to a full and fair review. But nothing. All the counsel did is the same thing that we're hearing here today, is making arguments. You paid before. You should have kept paying. Well, let me ask you about that. And in a way, we're being, there's a couple of new areas of law presented by this case that the Ninth Circuit really hasn't expressly ruled upon. And the first one is that body of law that the Eighth and Seventh Circuit seems to be pursuing about if the insurance company has consistently paid over several years, the burden shifts. The second one has to do with the weight that is to be given to the post-security administrator's decision, which the Seventh Circuit says brings us right into the penumbra of collateral estoppel. Under the facts of that case, and what's really interesting, and I'll hit that one first and then go to the other. Okay. But do you agree that, I mean, if we decide with you, then we're writing the law the other way, because those are squarely presented issues. No, because the facts are so, so different. In the LADD versus ITT case, the LADD case out of the Seventh Circuit. Is the legal issue presented to us? Is this a legal issue? The legal issue. I'm just asking you, do we have to decide these legal questions in this case? I don't believe so, because the question here is whether it was clearly erroneous. Unless you're recreating Ninth Circuit law. No, no. What I'm saying, though, is your opponent is saying Judge Rill was wrong because, for many reasons, but let's take social security. He said he wasn't bound by social security. That's correct as far as it goes, but he's also asking us to say, but we have to give it some level of weight that borders on res judicata, some kind of not, you know, conclusively binding effect, but under the Seventh Circuit, and I think it's the first, it's two other circuits have done that. Well, actually, and let me clarify this. The Seventh Circuit's the only one to adopt that, the LADD case. They are the only one. I saw somewhere in there, the other circuit says something close to it, although it's not binding, we give it meaningful effect. Well, exactly. The Sixth Circuit has said that. It's the sixth in Darland, which has probably been aggregated by the Supreme Court's decision in Black and Decker v. North, but we have to look at what happened in LADD. In LADD, the decision of the Social Security Administration was contemporaneous with the disability decision, and the insurer sent her to an IME in connection with both, and that IME was unfavorable, and yet they still denied benefits. Here, you have a Social Security decision that's several years old. There's no evidence of any reevaluation by the Social Security Administration, and frankly, I think LADD is on questionable footing now after Black and Decker v. North because the standard, you know, that Social Security relies on certain standards that don't apply under ERISA, such as the weight of an individual, I'm sorry, not the weight, the age of an individual, the treatment position. But I'm saying, if Sarah found she was permanently disabled six years ago, how did she become unpermanently disabled with a progressively degenerative disease? It's not progressively. Fibromyalgia is not a progressively degenerative disease. It's one that some people can have complete recoveries from and are capable of working. It's one that at time has waves of, of degeneration and then recovery. So the fact that there is no, there is never any subsequent review by Social Security Administration weighs against that. The seven, I'm sorry, Your Honor. If we've heard on this, I wanted to ask you a question on the subject matter of the incorrect statement of the law as to his being limited to the administrative record. Okay. Now it seems to me that if we take the rule that we're bound by his findings of fact, conclusion of laws to what he considered, not, not your proposal of the silver case, but taking what he did, and we find that to be error and abuse of because we know what he would have done had he taken the other declarations into consideration, he would have thrown them out because he considers them not credible. So is this a two-step process? One error and two, that the error be prejudicial or therefore not be harmless. Precisely, Your Honor, that I couldn't make the argument for you. You, you certainly have. And I thought, well, I made it in the brief, so I'll take the original. No, let me ask you, let me ask you. Another question. I think that is the case, Your Honor. I, I really poured over this contract because to me, this is a contract, ERISA approved contract, but, and we apply ERISA law to it. Where in your contract does it suggest that any time you can go back and require this person to submit proof that she fails to be totally disabled? Well, I think the provisions that Your Honor mentioned earlier, that to receive a monthly, they don't say that. Well, what they say, Your Honor, is to receive a monthly benefit, a claimant must submit satisfactory proof of total disability to us. But you know, a monthly benefit terminates when a claimant fails to submit. So frankly, your contract suggests that there'll be two times when you really look at this, one at the beginning of the 60 month benefit and at the end of the 60 month benefit, then there comes another provision. And that is that she not only show that she is disabled, but that she can't perform any job. For the first 60 months, she just shows that she cannot perform the material duties of her occupation. Then after that 60 months, then she has to show that she cannot determine any occupation, not just that one. Full time. Full time. Full time. And at those situations, past, and you kept paying. We're not here just for two years or three years or four years. We went eight years, three more years. While they investigated. While what? While they investigated. Well, frankly, investigated is a question. That's, I guess, in the eye of the beholder. The honest truth is I've tried to pour over this where she is required in your contract to continually submit satisfactory proof. To receive a monthly benefit. Where does it say she has to continue to do that? It seems like she submitted satisfactory proof at first. And it seems as if based on the facts, she submitted satisfactory proof at the 60 month time. Where does it say she has to continue to submit? Well, Your Honor, first of all, what you're saying is estoppel. Estoppel doesn't apply in the Ninth Circuit under ERISA, unless it's contrary. I'm not saying anything about estoppel. I'm saying provide me a contract provision, which you want Judge Real and therefore me to enforce, which would suggest that she has to continue to show you proof of disability. A monthly benefit terminates when a claimant fails to submit satisfactory proof of total disability. It seems to me that's a question of fact Judge Real ought to have a chance to look at. And he did. Well, he didn't because he thought he could only look at the administrative record. Well, and that's the law, Your Honor, not that he can only consider it. But generally, the Mangaluzzo decision, Carney, Opena state that that's the basis. That's going to be the general basis, unless you can show some significant circumstances that demonstrate the need for that to conduct an adequate de novo review. Furthermore, the fact that you didn't submit something that you could have later doesn't create that need. And in this case, all of this stuff that they're saying that, you know, years later should have been submitted, should have been considered, why didn't they submit it during the appeal when they had the right to? That's the law. They, ERISA has the safeguards. It's called the full and fair review. It's called the appeal. She had her appeal and Dr. Hoos could have said, and by the way, if you read it, it clearly, these were attorney crafted declarations and Judge Real had reason to question them. Dr. Hoos says, well, I didn't, he didn't say, he didn't, I mean, the honest truth was it seemed like he read pretty carefully some of them, but other, other ones he didn't even want to read. Well, I, I, I don't, I wasn't there, but from what I read in the record, I think he considered it all. But what I do see is him saying, well, you know, Dr. Hoos said, here's a perfect example. Dr. Hoos says what led to all this is there's no treatment for her for a significant period of time or limited treatment. So we asked the doctors, how's she doing? Dr. Hoos, who's the specialist says she can do full time light duty, light. So we then say, let's do a vocational review, but being fair, we'll limit it to sedentary and we find a bunch of sedentary jobs and we write back to her doctors. Do we have to know? But my client does write back and said to her doctors, can she do sedentary? Did it say full time? No. And in Dr. Hoos's declaration, obviously crafted by the attorney, he says, oh, but in this I never said on this other form, full time sedentary. Yeah. But you said full time light duty earlier. So clear. Full time light is heavier than full time sedentary under the nomenclature, right? Yes. Yes, it is. Sedentary is the least physically demanding. Counselor, so, so the SSA decided that the claimant's residual functional capacity for the full range of sedentary work is reduced by fatigue and inability to sustain activities and made a full payment to her, which then she turned around and gave to you, so you took all of her social security benefits, right? That is my understanding of the contractual terms. So she's not getting anything from social security now. But she's still getting what the policy provides for, which is 60% of her pre-disability income. That's what the policy provides. It guarantees a 60%. So combined with reliance standards, our first reliance standards, disability payment, and the offset that she would have, she would have been getting more than 60%. But not now. Not after Bill Jarrell's decision. But we are still giving her what contractually she is obligated to receive. Is that more or less than she would get under social security? Oh, no, no. She's getting more. She's getting more. In fact, there's a minimum monthly. So even if social security pays more than we do, she still gets a minimum monthly benefit on top of all that. So, so it's not like she's being undercompensated at all. But Your Honor, what's the date of that social security decision? It's years and years before the change in definition. That's what I don't follow because, so for you, so any, you're saying your company can at any time after the, the, one of the employees who's insured, they, who's demonstrated disability from any occupation, five years later, 10 years later, 20 years later, they can come back and re-litigate this issue? Is that your company's position? Your Honor, this isn't a condition that's progressively, progressively worse as, as, as you had thought. It's not. It's not just that I think that. It's just that I think, I mean, is that in your contract that, okay, so maybe I'm wrong, I'm, probably am wrong about, I'm probably confusing that with, that disease with another disease, like MS or something, but, so how does it work in your contract, where in your contract does it say like under, is it with certain diseases? Well, some contracts do have that, but no, Your Honor, it's, it's a disability. It's in any occupation. If you're totally disabled, if you can't work full-time in any occupation. My question is how many times do you, when, how often do you get to re-litigate this? That's the thing I don't understand, Your Honor. We didn't re-litigate. It's not like, you know, if they denied it, they lost, then they go and get more doctors and they denied it and they lost in court. That's not here. That's not this case. They paid benefits. If anything, you know, Your Honor, you mentioned they paid it for more than, than, than 60 months. So, I mean, are we being punished for not? The answer to Judge Wardlaw's question is that you can, uh, every month ask her, establish your disability. We can, but do we know? If she goes, if she goes to Lourdes and walks out sprightly, you can stop paying disability. They can, but do they, do they look at it each month? No, they don't just look, oh, here's this month. Look, there's a positive note. They look at the globe. They look at the most recent medical records. And in this case, the most recent medical records showed her own doctor saying she could work full time, a lack of treatment for a significant period of time. So it wasn't just based on one snippet and that's always, they say, you're cherry picking. We're not cherry picking. He's the one who relies on medical records from three or four years earlier to say that she remained disabled. I see I'm out of time. If Your Honors have any other questions. Thank you. Thank you for your argument. All right. All right. Stop talking. Come use your 90 seconds. Thank you, Your Honor. I appreciate it. Just a couple of points. The first off, with respect to the, to the waiver argument, with respect to the Hancock documents, I'm really not sure where that, where that comes from. The, the docket at 17 is where the declaration of Mr. Hancock was filed. It's in the excerpts of record. It's got a file stamp on it. So, you know, there, there hasn't been a, there hasn't been a waiver with respect to, to our right with respect to those documents. With respect to the citation of, of, of Silver, this court, as well as numerous other courts have held that when the judge signs off on findings submitted by one party, the other party has got the right to insist on a more searching review of the record. I've, I've never heard that concept applied in favor of the party that submitted the findings and had them signed by the judge. I submit support for it. Yes, I know. That's right. Invited error, Your Honor, with respect to the timing and why didn't we do this in a timely fashion? The, the denial letter gives Ms. Davis all of, of, of 60 days. Here, she's disabled. She's not represented by counsel. You know, she writes a letter sort of arguing a case, but she doesn't know what sort of evidence that has to be gathered. 60 days is up. The record closes. It's been decided and, and, and you're done. I don't think that's fair. Now, granted, Mr. Hancock took longer than 60 days to get engaged and, and do certain things. But the, the fact is, is that it, you know, the closing the record, it should be a, a shield rather than a sword. I mean, I, I understand how an insurance company has the right to sort of at some point to say we're done, but, but, but you shouldn't use this to affirmatively not look at things that perhaps you should look at, especially when they're being submitted for the very first time. With respect to social security disability, Calvert from the Sixth Circuit that I cited to the court has, has followed the, the Ladd case. Neither of those is, is, is, is it all undercut by the, by the Nord case rather. Nord says expressly that the insurance company is not allowed to disregard credible evidence of disability and certainly the administrative law judge's determination is, although I agree with, with counsel that fibromyalgia is not a degenerative disease and sometimes people get better from it. There's just no evidence that that happened here. And finally, Your Honor, with respect to the question that, that you had, Judge, Judge Bea about the, well, we can tell what Judge Real would have done with those documents because, you know, we can see what he said at the hearing. I, I, I submit that that's, you know, that that's doing exactly what the Ninth Circuit law that says you're just supposed to rely on the findings says you're not supposed to do. And it's just kind of another way of, of getting to that point. Counsel, you sound like the person who just won the Oscar and won't go off the stage. I think your time is up. Your Honor, thank you very much for your indulgence. Thank you very much. Thank you very much. Thank you both, counsel, for a good argument. And Davis versus FRS is submitted.
judges: Wardlaw, Bea, Smith